## COMMONWEALTH *vs.* DANIEL HOWE.
## SAME *vs.* HIRAM H. AMES.
## SAME *vs.* LYDIA A. BARNES.

The *St.* of 1855, *c.* 405, § 1, declaring all buildings, places or tenements used for the illegal sale or keeping of intoxicating liquors to be common nuisances, and to be regarded and treated as such, is constitutional.

An indictment on *St.* 1855, *c.* 405, § 1, which avers that the defendant at a certain time and place " did keep and maintain a common nuisance, to wit, a certain tenement," (described) " then and there used as a house of ill fame, resorted to for prostitution and lewdness, for illegal gaming, and also then and there used by the defendant for the illegal sale and illegal keeping of intoxicating liquors," need not conclude " to the common nuisance of all the citizens," &c.

After conviction on an indictment containing several counts for the same offence, only one of which is sufficient, judgment may be rendered on that count.

An indictment for unlawfully keeping a tenement in violation of *St.* 1855, *c.* 405, § 1, is supported by proof of the use of any part of the tenement for the purpose, although it consists of several rooms.

An indictment on *St.* 1855, *c.* 405, § 1, which avers that the defendant kept and maintained a certain tenement, used for the illegal sale and illegal keeping of intoxicating liquors, whereby, and by force of the statute in such case made and provided, the said tenement so kept, maintained and used, was then and there a common nuisance, to the common nuisance, &c. sufficiently avers that the tenement was a nuisance.

A party has no right of exception to the refusal of the judge presiding at a trial to instruct a witness that if he would avail himself of his right to refuse to answer interrogatories, on the ground that the answers might criminate him, he must make the objection before answering anything upon that subject.

INDICTMENTS on *St.* 1855, *c.* 405, § 1. The two first were tried in the court of common pleas for Worcester at May term 1858, before *Mellen*, C. J., and the exceptions to his rulings argued at October term 1858 at Worcester.

The indictment against Howe contained two counts, one of which alleged that the defendant at Worcester, during certain times, " did keep and maintain a certain tenement there situate, called and well known as the ' Lone Star Saloon,' and used as a house of ill fame, resorted to for prostitution and lewdness, for illegal gaming, and for the illegal sale and illegal keeping of intoxicating liquors, then and there, on the days and times aforesaid, to the great injury and common nuisance of all the peaceable citizens of said commonwealth there residing, inhabiting and passing ; " and the other alleged that the defendant at the same time and place " did keep and maintain a common nuisance, to

wit, a certain tenement called the 'Lone Star Saloon,' situate on the southerly side of Washington Square, so called, in said Worcester, and then and there used as a house of ill fame, resorted to for prostitution and lewdness, for illegal gaming, and said tenement was also then and there used by said Howe for the illegal sale and illegal keeping of intoxicating liquors."

Howe, after conviction, moved in arrest of judgment, 1st because the *St.* of 1855, *c.* 405, § 1, was unconstitutional and void ; 2d, because the first count did not clearly allege that the defendant kept a tenement used for the illegal sale or keeping of intoxicating liquor, but only that the defendant's tenement was resorted to for that purpose ; 3d, because the second count was bad, in not clearly alleging that the defendant kept or maintained the tenement used for the illegal sale or keeping of intoxicating liquor, to the common nuisance of all the citizens there inhabiting, being and residing. This motion was overruled, and the defendant excepted.

*E. B. Stoddard,* for Howe, in support of the third ground of the motion, cited *Commonwealth* v. *Smith,* 6 Cush. 80 ; *Commonwealth* v. *Kimball,* 7 Gray, 328.

THE indictment against Ames charged him with keeping and maintaining " a certain common nuisance, to wit, a certain tenement situate on the east side of Main Street in said Worcester, called and known by the name of the 'Eagle Saloon,'" then and there used by him for the illegal sale and illegal keeping of intoxicating liquors.

So much of Ames's bill of exceptions as concerned the points argued in this court was thus: " At the trial the defendant asked the court for the following instructions to the jury: 1st, that the statute under which this indictment is founded is unconstitutional and void ; 2d, that the evidence did not support the allegation in the indictment, to wit, the keeping of the Eagle Saloon, as it only tended to show that one room of said saloon, consisting of four or more rooms, was used for that purpose. The court refused so to instruct the jury, but instructed them, 1st, that the act under which this indictment was found was constitutional ; 2d, that if any portion of the premises known as

the Eagle Saloon was used for the illegal sale or keeping of intoxicating liquor, it would be sufficient to support the indict-ment."

*G. F. Verry,* for Ames, in support of the second exception, cited *Commonwealth* v. *Mc Caughey,* 9 Gray,    ; *Commonwealth* v. *Hall,* 15 Mass. 240 ; *State* v. *Sturdivant,* 21 Maine, 9.

IN the third case, the indictment averred that Lydia A. Barnes at Taunton, during a certain time, " did keep and maintain a certain tenement, then and there used as a house of ill fame, resorted to for prostitution and lewdness, and for illegal gaming, and then and there used for the illegal sale and illegal keeping of intoxicating liquors ; whereby, and by force of the statute in such case made and provided, the said tenement, then and there kept and maintained by the said Lydia A. Barnes, and then and there used and resorted to as aforesaid, was then and there a common nuisance ; to the great injury and common nuisance of all the peaceable citizens of said commonwealth there resid-ing, inhabiting and passing, against 'the peace and dignity of said commonwealth, and contrary to the form of the statute in such case made and provided." Trial in the court of common pleas in Bristol at June term 1858, before *Sanger,* J., who signed this bill of exceptions :

" Upon the trial of this cause, the government put upon the stand a witness who had been an inmate of the house described in the indictment during the time, or a portion of the time, cov-ered by the indictment. The counsel for the defendant, before any questions had been put by the district attorney to the wit-ness, requested the court to instruct the witness that if she would avail herself of her right to refuse to answer interrogato-ries, on the ground that the answers might criminate herself, she must make the objection to answering at the time when she was inquired of relating to any subject matter upon which, if she were examined in full, her answers would tend to criminate her ; otherwise, if she answered any questions touching said sub-ject matter, she would be held to have waived her privilege, and would be obliged to answer in full. This instruction the court declined to give.

" Afterwards, in the progress of the examination of said wit-
ness, she was asked by the district attorney if she paid board to
the defendant. The witness replied that she declined to answer.
She was asked by the court on what ground she declined to
answer; she replied she did not like to tell it right out before
everybody. Thereupon the court, at the request of the defend-
ant's counsel, requested the witness to leave the court room, and
during her absence the defendant's counsel renewed the request
to the court for instructions to the witness. Again the court
declined to give them. Upon the return of the witness, she
answered, without objecting, the questions put by the district
attorney.

" The witness had previously testified in a case in which the
witness' position and conduct in the defendant's house, during
a portion of the period embraced in the indictment, had been
made the subject of inquiry; and in her replies to some ques-
tions then put, and in declining to reply to other questions, had
exhibited, in the opinion of the court, a knowledge of her legal
rights as a witness.

" The defendant put no questions to the witness in cross-
examination. The jury found the defendant guilty. To these
refusals the defendant excepts."

Barnes also moved in arrest of judgment, because the statute
was unconstitutional; and because there was no sufficient aver-
ment that the tenement in question was a common nuisance, or
that the defendant kept and maintained a common nuisance.
This motion being overruled, she again excepted, and her excep-
tions were argued at Taunton at October term 1858.

*C. I. Reed,* for Barnes, to the point, that the averment of
common nuisance was argumentative and bad, and a mere
statement of a conclusion of law, cited 1 Chit. Pl. (6th Amer.
ed.) 539, and cases cited; *Atwood* v. *Caswell,* 19 Pick. 493;
*Austin* v. *Parker,* 13 Pick. 222; *Bean* v. *Farnam,* 6 Pick. 269;
Steph. Pl. (1st Amer. ed.) 384, and cases cited; *Sutcliffe* v.
*Constable,* Yelv. (Amer. ed.) 223; Bac. Ab. Pleas & Pleadings,
I, 5; Archb. Crim. Pl. (5th Amer. ed.) 48, 54; 1 Chit. Crim.
Law, 237; *Rex* v. *Knight,* 1 Salk. 375; *The Queen* v. *Goddard*

3 *

3 Salk. 171; *The Queen* v. *Collingwood,* 3 Salk. 42; and to the exception to the refusal to instruct the witness, *Commonwealth* v. *Kimball,* 24 Pick. 359; *Foster* v. *Pierce,* 11 Cush. 438; *Commonwealth* v. *Shaw,* 4 Cush. 594.

The reasons urged against the constitutionality of the statute were these : By the *St.* of 1855, *c.* 405, § 1, buildings or tenements used for the illegal sale or keeping of intoxicating liquors are " declared to be common nuisances, and are to be regarded and treated as such." . It does not even require a knowledge of the unlawful use on the part of the owner. If they are common nuisances, they may be destroyed and abated by any one, without first judicially ascertaining whether the circumstances exist which are declared unlawful. 1 Russell on Crimes, (7th Amer. ed.) 328. Bac. Ab. Nuisances, C. 1 Hawk. *c.* 75, § 12. 1 Bishop Crim. Law, § 700. *Wales* v. *Stetson,* 2 Mass. 146. *Arundel* v. *M' Culloch,* 10 Mass. 70. *Baker* v. *Boston,* 12 Pick. 193. *Commonwealth* v. *Alger,* 7 Cush. 53. But the legislature cannot provide for the destruction of any recognized species of property, without giving an opportunity to the owner to protect his property, in proceedings in due course of law. Declaration of Rights, art. 12. *Fisher* v. *McGirr,* 1 Gray, 27, 28, 32. 2 Kent Com. (6th ed.) 13. Story on U. S. Const. § 1783. Sedgwick on Stat. & Const. Law, 514. *People* v. *Toynbee,* 20 Barb. 168. *Wynehamer.* v. *People,* 3 Kernan, 378.

*S. H. Phillips,* (Attorney General,) for the Commonwealth.

The decision of these cases was postponed until the case of *Brown* v. *Perkins* should have been argued, which was in fact argued in Essex at November term 1858, and judgment in it entered at May term 1859. 12 Gray.

METCALF, J. We do not find anything unconstitutional in the statute on which these indictments are founded.

Howe's motion in arrest of judgment was rightly overruled. There certainly is reason for doubting whether the first count sufficiently alleges that the defendant kept and maintained a tenement used for the illegal keeping and illegal sale of intoxicating liquors. But we need not decide that question; for the second count, which is for the same offence, alleges that the ten-

ement was kept, maintained and used by the defendant for the illegal keeping and illegal sale of such liquors. And as that count also alleges that the defendant " did keep and maintain a common nuisance, to wit, a certain tenement" used for purposes which by the statute make it a common nuisance, it was unnecessary that the count should conclude *ad commune nocumentum.* Such conclusion would have been superfluous repetition.

Assuming that the first count is insufficient, yet judgment should be rendered on the second count, which we have found to be sufficient. *Commonwealth* v. *Hawkins,* 3 Gray, 463.

In the case of Ames, we do not perceive any material variance between the allegation and the proof of the place used by the defendant for the unlawful keeping and unlawful sale of intoxicating liquors.

In Barnes's case, the indictment is in the form that has been used in previous cases, and been repeatedly sustained by this court. *Commonwealth* v. *Kimball,* 7 Gray, 328. *Commonwealth* v. *Kelley & France,* 7 Gray, 332, *note.*

The refusal of the judge, on motion of the defendant's counsel, to instruct a witness as to her right to decline to answer interrogatories, on the ground that her answers might criminate her, was well warranted, we think, by the decision in *Commonwealth* v. *Shaw,* 4 Cush. 594.    *Exceptions overruled.*