[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JULY 3, 1996
This matter was tried before the court on March 6, 1996. Simultaneous briefs were submitted on April 22, 1996.
There appears to be very little dispute as to the facts.
The parties appear to agree and the evidence shows that the subject premises were inspected by the Health Department.
Shortly after the inspection, the defendant owner of the premises was ordered to test for lead.
Lead test reports were received by the defendant on October 31, 1994.
In the meantime, i.e., October 24, 1994, the family and children occupying the subject premises vacated said premises. Since then no other children under the age of six have occupied the premises.
The report received by the defendant indicated the presence of lead which the defendant set about to correct without a plan.
On January 23, 1995, the Health Department issued two new orders. The order of abatement regarding nonlead items is not at issue here, and therefore renders moot the second count of the complaint.
The second order, however, is at issue. This is the notice of violation citing Connecticut General Statutes §§ 19a-206 (a) and 19a-111 c.
It is the position of the plaintiff that before any work was done a plan had to be submitted for approval per Connecticut General Statutes § 19a-111c. There is no dispute that such a plan was ever submitted and approved. Since the plan submitted on August 3, 1995 was never approved, the plaintiff contends that CT Page 5189 the defendant is in violation of the notice issued on January 23, 1995, and that the court should issue an injunction ordering the defendant to comply by correcting the violations. The plaintiff also seeks the imposition of civil fines pursuant to Connecticut General Statutes § 47a-58 (c).
The defendant says that the issue is moot since the children no longer occupy the premises, and therefore Connecticut General Statutes § 19a-111 c is inapplicable.
Section 19a-111c provides as follows:
 The owner of any dwelling in which the paint, plaster or other materials contain toxic levels of lead and in which children under the age of six reside, shall abate or manage such dangerous materials consistent with regulations adopted pursuant to this section. The commissioner of public health shall adopt regulations, in accordance with the provisions of chapter 54, establishing removal and abatement requirements and procedures for materials containing toxic levels of lead.
Our Supreme Court in Sadlowski v. Manchester, 206 Conn. 579,583 (1988), said that "[m]ootness implicates the subject matter jurisdiction of [the] . . court . . . If there is no longer an actual controversy in which [the court] . . . can afford practical relief to the parties, [it] . . . must dismiss . . ."
The legislative history of the abatement statute, Connecticut General Statutes § 19a-111c, does not indicate with any degree of clarity whether the duty to abate ends when the child moves out.
Connecticut General Statutes § 19a-111, which addresses elevated blood level reports, requires "action to be taken by the appropriate person . . . responsible for the condition . . . which brought about such lead poisoning as may be necessary to prevent further exposure of persons to such poisoning." Connecticut General Statutes § 19a-111c does not have any reference to "further exposure." It may well be that the distinction is that the 111 is intended to be remedial because the conditions have been proven dangerous as shown by the elevated blood level. Whereas 111(c) is a preventative measure specifically directed to children under age because of their greater susceptibility to lead poisoning. The logical sequence CT Page 5190 would be that once the child is gone, the need for precautionary abatement is eliminated and the abatement order is rendered moot.
Because of the statutory distinction, the court is inclined to believe that the legislature intended different responses to each situation and did not intend to have 111c apply when children were no longer exposed.
The plaintiff s argument that the defendant should have appealed under Connecticut General Statutes § 19a-229, is equally without merit. The defendant was not required to appeal to the commissioner.
The plaintiff's reliance on Water Resources Comm. v. Sand Stone Corp., 170 Conn. 27, 32, is misplaced. The statutes invoked in that case was §§ 22a-430 and 22a-436.
The relevant appeal statute in this case is 19a-229, which does not contain resort to further administrative remedies before appealing to the Superior Court. Section 19a-229 provides only that the aggrieved party "may" appeal.
Judgment may enter for the defendant.
MIHALAKOS, J.